IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
99 NOV -9 PM 4: 26
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
NOV 09 1999

| | |
|---|---|
| USX CORPORATION, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | CIVIL ACTION NUMBER |
| ) | |
| TIECO, INC., et al., ) | 95-C-3237-S |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION STRIKING THE CLAIMS OF THE PLAINTIFF**

This is a case in which Plaintiff has failed to initially disclose to Defendant evidence relevant to disputed facts; purposefully failed to produce relevant evidence as requested by Defendant; misled the Court; and deprived the jury of probative evidence. For all of these reasons, and as a sanction, the Court withdrew and struck Plaintiff's claims, pursuant to F.R.Civ.P. 37 and the inherent power of the Court. This opinion memorializes the background and circumstances which led to the imposition of this extraordinary sanction.

I

Plaintiff USX Corporation ("USX") claims that Defendant TIECO, Inc., ("TIECO") violated the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1962, ("RICO"), defrauded USX, and breached its contract with USX by submitting false invoices for Cushman vehicle parts never delivered to the Tractor Shop of its Fairfield (Alabama)

Works. While admitting that the Cushman parts listed on various invoices were not delivered to USX, TIECO maintains that at the request of, and as an accommodation to USX agents and employees, it delivered to the Tractor Shop equivalent parts and entire Cushman vehicles having a value equal to that of the parts listed on the invoices, as ordered by USX purchasing managers and expediters possessing the requisite purchasing authority. TIECO contends that USX ratified the actions of its managers and employees by accepting, utilizing, and sometimes disposing of the vehicles after their useful life.

Crucial to TIECO's defense are USX's files and inventories of Cushman mobile equipment physically present at the Tractor Shop. It is obviously a relevant consideration whether such files and inventories reflect the known presence and usage on USX premises of Cushman equipment never invoiced to USX.

II

In its initial disclosures to TIECO required under F.R.Civ.P. 26, USX did not include all documents relating to Cushman vehicles.

Through various requests for production, TIECO clearly sought the relevant documents.[1] Indubitably, some of the requested materials were produced after continued and

---

[1] In the second paragraph of TIECO's July 2, 1998, Second Request for Production, it sought "any and **all audits**, reconciliations and/or **inventories** related to the tractor shop at the Fairfield plant . . ." p. 2. (emphasis added). Preserving the usual perfunctory objections, USX responded that it would produce audit reports completed from 1993 to 1995 relating to the Tractor Shop.

In request No. 7 of TIECO's May 13, 1999, Fifth Request for Production, it requested "**all** fixed asset reports, **inventories** and/or reconciliations, **book inventories** and/or **physical**

2

labored efforts of TIECO, but other probative Cushman-related documents were not produced.

A week before trial, TIECO filed another motion to compel and for sanctions. The motion was premised, *inter alia*, on the alleged failure of USX to produce the Bob Brown inventory of Cushman vehicles, and the Falls/Ingram or Facility Re-Deployment Task Force list of Cushman vehicles compiled between May and July 1996. The Court summoned counsel for an in-chambers conference on the motion on Thursday afternoon of October 14.

At the conference, TIECO's counsel argued that in addition to the unproduced Brown and Falls inventories, USX had failed to produce any Cushman vehicle inventory maintained by Richard Autry, the head of the Tractor Shop. The Court then inquired of William Waudby, trial counsel for USX, whether he had produced to TIECO's counsel all of the Cushman vehicle documents in USX's possession. Waudby stated that he had produced all Cushman documents in his possession; but that other Cushman-related documents may be in various USX files at its headquarters in Pittsburgh. He stated that he did not know the location of these Pittsburgh files. He specifically denied knowledge of the

---

**inventories** performed by, performed in connection with, and/or performed on the **Tractor Shop** and/or central Tractor Shop from 1986 to present." (emphasis added). USX's June 1999 response to the request, recites, in relevant part: "Plaintiff already produced mobile and automotive equipment lists dated 02/08/96, and produced herewith are current mobile and automotive equipment lists. Plaintiffs will supplement this response and produce the current fixed asset report pertaining to mobile and automotive equipment at Fairfield Works and documents pertaining to the most recent physical inventory, to the extent any exist."

3

location of materials taken from the files of Autry by USX personnel when Autry was discharged. The Court was convinced (1) that Waudby had in fact produced all of the Cushman materials in his possession; and (2) other Cushman materials remained at an undefined location in USX's Pittsburgh headquarters.

Rather than striking all of USX's claims, the Court imposed the less severe sanction of barring USX from using at trial any evidence relating to Cushman vehicles.[2] In its October 15 Memorandum Opinion and Order of Preclusion, the Court wrote:

> Counsel for the Plaintiffs has conceded that USX Corporation may not have produced all of the available materials sought by the Defendants relating to inventories/records of Cushman vehicles. These materials should have been produced a long time ago. Several months ago, USX erroneously represented to Defendants' counsel that the materials had already been produced.
>
> The court finds and concludes that USX has made evasive and incomplete responses to the Defendants' discovery efforts related to Cushman vehicles. The court further finds no substantial justification for USX's failure to reasonably comply with Defendants' production requests.
>
> . . . And based on the uncertainty of Plaintiffs' counsel concerning the actual location of the requested materials, the Court finds that the said materials cannot reasonably be expected to be produced to Defendants' counsel in sufficient time for use at trial.

---

[2] The preclusion sanction was illusory - for it was obviously not in USX's interests to offer such evidence. In fact, USX took the position that even though the TIECO-provided Cushman vehicles may have been received, used, and disposed of by USX, such evidence would be irrelevant because USX was not properly invoiced for the vehicles. Without such evidence, TIECO justifiably argued that it would be prejudiced in its defense of the action.

4

Document 79, Court File.

Two business days after the conference, the case proceeded to trial by jury.

The trial testimony of Robert Hilton, the in-house USX associate counsel in charge of the TIECO matter, revealed that certain Cushman-related records had been shipped from Pittsburgh headquarters to Attorney Waudby's law firm in Birmingham several weeks before the trial.

The Court ordered Attorney Waudby to extract from those files any material claimed to be protected by the Lange-Simpson/USX attorney-client privilege, and to produce the files *instanter* for an *in camera* review. The redacted files were then produced in three boxes.

The contents of the files were incredible. They clearly showed that the Court had been misled, and that relevant Cushman vehicle files had not been produced.[3]

---

[3] One of the items produced is a brown accordion pocket envelope containing numerous numbered manilla folders. The folders are numbered C1-C85, and each folder relates to a discrete Cushman vehicle. Several folders are missing, but 45 of the extant 67 folders reflect Cushman vehicles provided to USX by or through TIECO! Put another way, two-thirds of USX's Cushman vehicles are associated, in some way or another, with TIECO. Court Exhibit ("CX") 1.

A "post-it" yellow note is appended to the cover of a green file entitled, "TIECO." The note recites: "from Autry's bottom right hand desk drawer." CX 4. Included in the file are documents describing various Cushman vehicles, including Cushman vehicles provided to USX by TIECO. One document, entitled "Mobile Equipment Maintenance Cost Summary, Sept. 1994," describes each piece of mobile equipment. CX 6. One set of documents deals with two Cushman vehicles delivered by TIECO to USX on February 21, 1995, and its third page reflects "Proof of Delivery" at USX by TIECO. CX 2. Another set of documents "From Autry's In Box-2d shelf" reflects, *inter alia,* TIECO's sale and delivery of various Cushman vehicles and parts to Richard Autry at USX, found on the "Right side of Autry's desk." CX 3, pp. 1, 3-6.

5

Waudby admitted that all of these files were in his possession at the time of the October 14 conference.

By the time that these previously unproduced files were delivered to and examined by TIECO's counsel, the case already had been submitted to the jury.

In these circumstances, the Court was convinced that if a lesser sanction and a re-trial on the merits were ordered, USX would not have been sufficiently punished and others would not be deterred from using similar abusive litigation tactics. Therefore, it struck and dismissed USX's claims.

### III

In imposing the fatal sanction of dismissal of USX's claims, the Court did not write on a clean slate. Rule 37(d) of the Federal Rules of Civil Procedure authorizes, among other things, the dismissal of an action where a party fails to produce documents properly sought under Rule 34. *Cf.* F.R.Civ.P. 37(b)(2)(C).

The constitutionality of dismissal of claims as a sanction for failure to provide discovery has been consistently upheld by the Supreme Court over the last ninety years. *Hammond Packing Co. v. State of Arkansas*, 212 U.S. 322 (1909). That case involved a refusal by the plaintiff to produce documents as ordered by the court. The court dismissed Hammond Packing's claims as a sanction. In upholding the sanction against a claim of violation of due process rights, Mr. Justice White wrote:

---

Documents in other files are unmistakably inventories of Cushman vehicles. CX 7-10.

> The proceeding here taken may therefore find its sanction in the undoubted right of the lawmaking power to create a presumption of fact as to be bad faith and untruth of an answer to be gotten from the suppression or failure to produce the proof ordered, when such proof concerned the rightful decision of the cause. . . . [T]he preservation of due process was secured by the presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense.

*Id.* at 350-51. The sanction of dismissal may not constitutionally be utilized when the failure to comply is based on inability, rather than wilfulness or bad faith. *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197 (1958); *Hovey v. Elliott*, 167 U.S. 409 (1897). And, obviously, a dismissal sanction should not be utilized when lesser sanctions would achieve the same ends.

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, a court is authorized to strike pleadings, stay the proceedings, dismiss an action, or enter a default judgment against a party who has failed to properly respond to discovery. F.R.Civ.P. 37(d);(b)(2)(C). The Rule confers on district courts broad discretion to fashion appropriate sanctions for violations of discovery orders.

In *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976), the Third Circuit had reversed the district court's dismissal of an antitrust action for the plaintiff's failure to timely answer written interrogatories. In reversing the circuit court's decision, the Supreme Court observed:

7

> There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order. It is quite reasonable to conclude that a party who has been subjected to such an order will feel duly chastened, so that even though he succeeds in having the order reversed on appeal he will nonetheless comply promptly with future discovery orders of the district court.
>
> But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. If the decision of the Court of Appeals remained undisturbed in this case, it might well be that these respondents would faithfully comply with all future discovery orders entered by the District Court in this case. But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts.

*Id.* at 642-43.

Both before and after *National Hockey*, our circuit and its predecessor have upheld dismissals as sanctions under Rule 37. In *Emerick v. Fenick Industries, Inc.*, 539 F.2d 1379, (5th Cir. 1976) the old Fifth Circuit held that where a defendant demonstrates flagrant bad faith and callous disregard of its responsibilities, dismissal as a sanction is not an abuse of discretion. The court in *Factory Air Conditioning Corp., v. Westside Toyota, Inc.*, 579 F.2d 334, 337 (5th Cir. 1978), observed that where a party has consistently failed to provide discovery as ordered by the court, the dismissal sanction is mandated: "To do otherwise would be an open admission by this court that it can do nothing when a party in a civil suit

deliberately flouts its orders." The Eleventh Circuit has held that "[w]hen a party demonstrates flagrant disregard for the court and the discovery process, . . . dismissal is not an abuse of discretion. *Aztec Steel Co. v. Florida Steel Corp.*, 691 F.2d 480 , 481 (11th Cir. 1982). *See also Buchanan v. Bowman*, 820 F.2d 359 (11th Cir. 1987); *Malautea v. Suzuki Motor Co., Ltd*, 987 F.2d 1536 (11th Cir. 1993).

The Rule 37 dismissal sanction is predicated on the violation of an order compelling discovery. *U.S. v. Certain Real Property Located at Route 1*, 126 F.3d 1314 (11th Cir. 1997); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir. 1986).

In addition to the broad discretion conferred by Rule 37 for violation of discovery orders, a district court has inherent power to utilize the dismissal sanction. But where a court relies on such inherent power, it should explain why lesser sanctions are unlikely to be effective in deterring and punishing abuses of the judicial process. *Shepard v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1479 (D.C. Cir. 1995).

IV

The sanction of dismissal of USX's claims is compelled by its egregious conduct.

Although the Court had not formally issued an order compelling USX to produce the Cushman vehicle inventories and documents, the absence of such orders is attributable to USX's false representation to TIECO's counsel that it had already produced the requested documents prior to the expiration of the discovery deadline, and USX's

misrepresentation to the Court that it had produced all of the Cushman vehicle documents in the possession of its counsel. Put another way, the absence of court orders compelling discovery is the product of USX's bad faith misrepresentation both to opposing counsel and to the Court. Under these circumstances, USX's misconduct has waived the usual requirement of a court order compelling production as the predicate for sanctions. *Cf. Certain Real Property*, 126 F.3d at 1317-18.

IV

Lesser sanctions in this case would not have been effective in punishing and deterring USX. Most importantly, the case had been fully-tried over an eight-day period and submitted to the jury when USX's transgressions were unearthed. It would have been imprudent to (1) interrupt the jury's deliberations near the end of the second week of trial; (2) send the jurors on their separate ways for an indefinite period of time as TIECO's counsel reviewed the new evidence and otherwise prepared for a re-trial; (3) re-open the evidentiary phase of the trial; (4) reschedule summations; and (5) resubmit the case to the jury to resume its deliberations. Most probably, by the time that the case would have been resubmitted to the jurors, their individual and collective dimmed recollections of the original evidence would have been substantially compromised, and therefore most unlikely to produce a just verdict.

To declare a mistrial, impose monetary sanctions on USX, and schedule a retrial of USX's claims would also have been inadvisable. In compensatory damages, USX

claims less than $60,000. This amount is considerably less than it paid its auditors in processing the case. USX's compensatory damages pale in comparison to the predictable cost of its attorneys' fees in the event of a retrial. It is a fair guess that TIECO is less than overjoyed by the prospect of incurring such fees for retrial of the case. Moreover, the Court's docket cannot accommodate a retrial of USX's claims at anytime in the near future.

It is significant that USX had fair warning of the likely consequences in the event the Court learned of its transgressions. In the related criminal prosecution of TIECO[4] and some of its officers/employees, the state court dismissed with prejudice the criminal prosecutions initiated at USX's behest.[5] *State of Alabama v. TIECO, Inc., et al.,* (Jefferson County Circuit Court, Nos. CC-96-2961, 2964, 2967, 2986, 2988, 2990-2991, Opinion dated July 16, 1997). In doing so, Circuit Court Judge Garrett wrote:

> The Defendants have presented extensive evidence of serious and wholesale prosecutorial misconduct by the Office of the Attorney General, its attorneys, investigators, and agents, throughout the initiation, investigation, and prosecution of this case. The Attorney General has failed to rebut this evidence. . . . The Court finds that even having been given every benefit of any doubt, the misconduct of the Attorney General in this case

---

[4] The jury found for TIECO on all of its counterclaims, including those for civil conspiracy. The civil conspiracy counterclaim is that USX consipred with the Office of the Attorney General of the State of Alabama, *inter alia*, to use the criminal process to collect a civil debt.

[5] The trial of this case was stayed during the pendency of the criminal proceedings. Had TIECO been convicted, liability in this case would have been established. The jury would only have tried the issue of damages.

11

> far surpasses in both extensiveness and measure the totality of any prosecutorial misconduct ever previously presented to or witnessed by this court.
>
> * * *
>
> The dismissal of these indictments is fully justified in this case because this Court is dealing with more than just the mere failure to produce exculpatory evidence or with just a mere instance of prosecutorial misconduct. Based on the totality of circumstances in this case including: (1) the Attorney General's repeated refusals and failures to produce exculpatory evidence; (2) the Attorney General's repeated denials of the very existence of exculpatory evidence subsequently discovered by the Defendants; (3) the flagrant disregard of the constitutional rights of the accused; (4) the completely incredible and deceptive testimony of so many witnesses this court treated as officers of the court (some of whom were either assistants or agents for the Attorney General); and (5) the very patterns of prosecutorial misconduct which exist in this case; this Court can only conclude it is dealing with either intentional and deliberate misconduct or conduct so reckless and improper as to constitute conscious disregard for the lawful duties of the Attorney General and the integrity and dignity of this court and this judge.

Defendants' Exhibit ("DX") 1, pp. 1-2. Thus, as a virtual party to the criminal proceedings, USX was well aware of the substantial risk of a sanctions dismissal when it wilfully decided to suppress material evidence after such evidence had been repeatedly requested by TIECO, and when it apparently decided to intentionally deceive this Court about its suppression. It deliberately chose to run the risk of dismissal of its claims with prejudice if its misconduct were subsequently discovered.

If the dismissal with prejudice of its criminal charges against TIECO were not

12

enough to dissuade USX from suppressing evidence and misleading the Court in the civil litigation of essentially the same issues, lesser sanctions would surely not suffice to deter similar misconduct by USX and others in the future.

It is doubtful that lesser sanctions would have sufficiently punished USX.

## Conclusion

For all of the reasons explicated herein, the Court granted TIECO's motion to strike all of USX's claims, with prejudice.

DONE this \_\_\_\_9th\_\_\_\_ day of November, 1999.

_____
UNITED STATES DISTRICT JUDGE
U. W. CLEMON